UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**UNITED STATES OF AMERICA**

v.                              CRIMINAL ACTION NO. 2:16-00021

**TIMOTHY LEFTENANT**

MEMORANDUM OPINION AND ORDER

Pursuant to the evidentiary hearing on the defendant's motion to suppress held on June 2, 2016, the court makes the following findings of fact by a preponderance of the evidence and the conclusions of law that follow.

On December 28, 2015, the management personnel at America's Best Value Inn, located in or near St. Albans, West Virginia, contacted the Kanawha County Sheriff's Department for the purpose of obtaining assistance in the event it was needed to expel a female trespasser whom the management thought was occupying Room 292, and who had been barred from the premises. The officers responded from the Kanawha County Sheriff's Office. At approximately 7:00 p.m., Corporal Eary and Corporal Fouch, both deputy sheriffs, met with the managerial personnel before proceeding to Room 292.

1

The two officers, led by the manager and an assistant with the Inn, proceeded to Room 292 located on the second floor and fronting on an unenclosed hallway.  As they approached the door, they passed by the heating and air-conditioning unit venting out from that same room.  One of the two Inn employees who was first to pass by the venting unit commented, "Smell that weed."  As the other Inn employee followed, one of them gestured with his hands as if wafting the air so as to indicate that the aroma of marijuana was emanating from the heating unit of Room 292.

One of the managerial people knocked on the door of Room 292 announcing, "Office."  There was no immediate response.  Seconds later, that same individual knocked once more and again announced, "Office."  At that point, the door opened and the strong odor of marijuana rushed out, more pronounced than that which had been detected emanating from the heating unit.  The defendant appeared in the doorway at which time the Inn employee made known to him that he was interested in ascertaining whether or not the presumed trespasser was present.  It developed very quickly that the trespasser, a female whom the management knew by sight, but not by name, was not present.  There was a woman in the room, along with the defendant.  The defendant told the

officers that a woman whose name he did not know had left the room five or ten minutes earlier.

Inquiry was made by Corporal Eary as to whether or not there was anyone else in the room or in the bathroom. Apparently satisfied by the answers that there was no one else there, Corporal Eary then asked the defendant, who was at the doorway, to step out.  The defendant took a step back, not complying immediately, and Corporal Eary then said, "Come out here," which the defendant did.  Up to that time, the defendant's hands were not in his pockets.  The woman in the room was asked to come out as well.  She did.

Corporal Eary then went to the point on the corridor where the defendant was standing and Corporal Fouch moved towards the woman.  As they did so, Corporal Eary asked the defendant, who must have just put his hands in his pockets, to get his hands out of his pockets.  That request was promptly followed by Corporal Eary's statement that, "I'm going to pat you down for my safety."  The defendant was facing towards the exterior or parking lot area and Corporal Eary, who was directly behind him, told him to "put your hands on your head," and quickly repeated that command.  The defendant responded that he was not resisting.  Corporal Eary repeated, "put your hands on your head," which the defendant was slow to do.  Corporal Eary

3

told him the same thing again.  At that point, Corporal Eary asked, "Is there any gun or anything in your pockets?"  The defendant responded, "There is a gun in the room."  Corporal Eary asked again, "Is there a gun in your pocket?"  The defendant did not answer.

At nearly that same time, the defendant was once more instructed to put his hands on the top of his head, which he did.  When he did so, Corporal Eary's left hand came up to where the defendant's hands were located, near or at the top of his head, and then the officer's right hand moved up with a set of handcuffs which may have touched the defendant, who would not necessarily have seen them, but could have felt them.  At that instant the defendant bolted down the corridor, away from the officers and down the steps.  In the process of fleeing the scene, the defendant's toboggan, in which heroin was later found, fell from his head to the floor where he had been standing.

The defendant ran across the parking lot with the officers in pursuit.  On the way, the defendant was seen with a gun in his hand.  He dropped the gun on the parking lot, but quickly retrieved it and continued running.  The defendant crossed MacCorkle Avenue, and then ran in an easterly direction with the gun in his left hand, and was seen throwing it across

4

his body and into the woods.  In due course, he was captured after being Tased and was taken to headquarters where a packet of 5.25 grams of marijuana was found in his pocket.

The court finds that the strong indication of the presence of marijuana, coupled with the defendant's placing his hands in his pockets until ordered to remove them, and, in sequence, declining to answer whether he had a gun in his pocket but volunteering that a gun was in the room, served to satisfy a reasonably articulable suspicion on the part of the officers that criminal activity was afoot, evidenced by the pungent aroma of marijuana, and the concern that the defendant, with his hands in his pockets, was a potential threat for the carrying of a weapon.  The circumstances were such that the officers were warranted for purposes of their own safety to pat the defendant down.  When aware that a pat down was indeed about to take place, coupled with the officer's insistence that he place his hands on his head, the defendant bolted from the scene.

The officers thereafter saw the defendant with the gun in his hand.  As he fled, he dropped the gun on the parking lot, quickly picked it up and continued running.  It was also seen to be discarded by him near the highway.  The gun, a Taurus 24/7 9mm pistol, was found later that same evening.  When a search warrant was subsequently issued for the room, as well as the

defendant's vehicle that was at the Inn, there was found in the room a 9mm 24/7 magazine loaded with nine rounds. A holster was located in the vehicle.

Based on the totality of the circumstances, the court concludes that the officers had a reasonable suspicion, supported by articulable facts, that criminal activity was afoot, authorizing Corporal Eary to perform a safety frisk of the defendant to determine whether or not he was armed. It is accordingly ORDERED that the defendant's motion to suppress, be, and it hereby is, denied.

The Clerk is directed to forward copies of this order to the defendant and all counsel of record.

DATED: June 13, 2016

John T. Copenhaver, Jr.
United States District Judge